IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRCT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ZULEYKA RIVERA CARRASQUILLO,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 1:25-CV-02175-BYP<br><br>JUDGE BENITA Y. PEARSON<br>UNITED STATES DISTRICT JUDGE<br><br>MAGISTRATE JUDGE<br>JONATHAN D. GREENBERG<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff, Zuleyka Rivera Carrasquillo ("Plaintiff" or "Carrasquillo"), on behalf of minor A.Y.M.R., challenges the final decision of Defendant, Frank Bisignano,[1] Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. PROCEDURAL HISTORY

In September 2023, Carrasquillo filed an application for SSI on A.Y.M.R.'s behalf, alleging a disability onset date of November 1, 2022, and claiming A.Y.M.R. was disabled due to a learning disability. (Transcript ("Tr.") 20, 54.) The application was denied initially and upon reconsideration, and Carrasquillo requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 20.)

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security.

On August 19, 2024, an ALJ held a hearing, during which A.Y.M.R. and Carrasquillo, represented by counsel, testified. (*Id.*) On August 29, 2024, the ALJ issued a written decision finding A.Y.M.R. was not disabled. (*Id.* at 20-31.) The ALJ's decision became final on August 13, 2025, when the Appeals Council declined further review. (*Id.* at 1-8.)

On October 10, 2025, Carrasquillo filed a Complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 8-10.) Carrasquillo asserts the following assignment of error:

(1) The ALJ's assessment of Claimant's limitations was legally erroneous and failed to comply with the standards of 20 C.F.R. § 416.926a.

(Doc. No. 8.)

## II. EVIDENCE

### A. Medical Evidence[2]

On October 27, 2022, A.Y.M.R. saw school psychologist Diane DeCaprio, M.A., Ed.S., for a psychoeducational assessment after referrals by A.Y.M.R.'s small group reading teacher and classroom teacher for concerns with difficulty decoding, reading and writing, basic math facts, and receiving direction. (Tr. 276.) Carrasquillo reported A.Y.M.R. got along with others at home, although his attitude had changed, and he liked to play on his phone, watch videos, and play with cars. (*Id.*) He had friends but preferred to be alone. (*Id.*) A.Y.M.R.'s classroom teacher reported that A.Y.M.R. was friendly and creative, worked well with others, and stayed calm and content most days. (*Id.*) He could make friends quickly and could be self-motivated, and he did not demonstrate "significant changes in emotions." (*Id.*) A.Y.M.R.'s classroom teacher reported he was "somewhat below grade level'" in religion, math, science, and history, and "'‘far below grade level'" in English/language arts. (*Id.* at 277.) A.Y.M.R. could be

[2] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.

talkative during class and work time and could struggle with following directions. (*Id.*) He also had difficulty staying focused, lost things, and daydreamed. (*Id.*) DeCaprio noted that A.Y.M.R. was repeating fourth grade. (*Id.* at 276.) A.Y.M.R.'s grades ranged from an A+ (music) to a D+ (religion), and he had missed nine days in the first trimester of this school year in part because of family travel to Puerto Rico because of a hurricane. (*Id.* at 277.)

On examination, DeCaprio found A.Y.M.R. friendly and cooperative, and he appeared to try his best on all tasks given during the examination. (*Id.* at 278.) WISC-V intelligence testing revealed a full-scale IQ of 76, which fell in the "very low range" and reflected functioning at the 5th percentile. (*Id.* at 279.) Additional cognitive testing revealed "significant strengths and weaknesses"; A.Y.M.R. showed significant strengths with visual spatial and processing speed skills and significant weaknesses with verbal comprehension, fluid reasoning, and working memory. (*Id.* at 279-80, 283-84.) A.Y.M.R. showed academic strength in math application and academic weaknesses in basic reading, reading fluency, reading comprehension, math calculation, spelling, and overall written expression skills. (*Id.* at 279-80, 284.) An Achenbach Child Behavior Checklist — Teacher Rating Form revealed scores in the "borderline clinically significant range" in the following areas: withdrawn/depressed, attention problems, rule-breaking behavior, and overall externalizing problems. (*Id.* at 282083.) DeCaprio made several recommendations that might benefit A.Y.M.R. and noted that he needed to improve his attendance considering his academic weaknesses. (*Id.* at 284-85.)

On November 30, 2022, A.Y.M.R. saw Candace Searles, LPCC, for a behavioral health assessment. (*Id.* at 390.) Carrasquillo reported A.Y.M.R. had been having trouble in school and she wanted a second opinion. (*Id.* at 391.) Carrasquillo told Searles that reports from the school showed A.Y.M.R. is reading at a first-grade level and performing math at a second-grade level, and he was supposed to be in fifth grade. (*Id.*) Carrasquillo stated that "there [was] no official diagnosis from the

school, they just told her he was a slow learner and they want to put him in a special group." (*Id.*) Searles noted A.Y.M.R. was repeating fourth grade. (*Id.*) Carrasquillo also expressed concerns with how A.Y.M.R. responded to direction, as he got upset sometimes, and that he did not leave his room very much. (*Id.*) Carrasquillo reported A.Y.M.R. demonstrated the following symptoms: isolation, inattention, poor focus, distractibility, trouble in school, poor listening, and low frustration tolerance. (*Id.*) Sometimes, when A.Y.M.R. got frustrated with a game or with his Legos, he would hit or throw it. (*Id.*)

On examination, Searles found soft speech, neutral/euthymic mood, congruent affect, normal thought content, linear thought process, normal perception, cooperative behavior, and fair insight and judgment. (*Id.* at 395.) Searles noted "it was important" to consider that English was A.Y.M.R.'s second language, with Spanish the primary language used at home while all education and testing was done in English. (*Id.* at 396.) Searles provided a preliminary diagnosis of unspecified learning disabilities, rule out ADHD. (*Id.*) Searles referred A.Y.M.R. to pediatric psychiatry for further evaluation and possible medication management. (*Id.*) Searles also referred A.Y.M.R. to case management to help support him in school and to explore additional educational resources. (*Id.*)

On February 6, 2023, A.Y.M.R. saw David Stabler, APRN, for an initial psychiatric evaluation. (*Id.* at 405.) Carrasquillo reported that A.Y.M.R. did not get along with his dad or his sister. (*Id.* at 406.) Carrasquillo told Stabler that A.Y.M.R. did not have a language barrier but rather was unable to focus. (*Id.*) At school, A.Y.M.R. had an IEP and a "helper." (*Id.*) A.Y.M.R.'s grades improved after the school put this helper in place. (*Id.*) Carrasquillo denied any hyperactivity but endorsed difficulty concentrating, occasional difficulty following directions, and anger. (*Id.*) Carrasquillo reported A.Y.M.R. got angry easily, was angry most of the week, and did not feel guilty when he hit his sister. (*Id.*)

On examination, Stabler found intermittent eye contact, normal motor activity, soft speech, a full range of affect, nervous and irritated mood, normal thought content and thought process, normal

perception, irritable and guarded demeanor, and fair judgment and insight. (*Id.* at 407-08.) Stabler prescribed guanfacine and referred A.Y.M.R. to counseling. (*Id.* at 408.)

On March 13, 2023, A.Y.M.R. saw Stabler for follow up and medication management. (*Id.* at 400-01.) Carrasquillo reported improved behavior and increased calm, but A.Y.M.R. showed increased irritability and mood irregularities. (*Id.* at 401, 403.) A.Y.M.R. told Stabler he was bored at school and at home, and his coping method was isolating himself in his room and watching YouTube. (*Id.* at 403.) A.Y.M.R. stated that his medicine helped his mood. (*Id.*) On examination, Stabler found A.Y.M.R. relaxed but with poor eye contact, as well as normal speech, neutral mood, normal thought content and perception, and appropriate judgment and insight. (*Id.*) Stabler noted that Carrasquillo would ask questions and A.Y.M.R. seemed to ignore her. (*Id.*) Stabler further noted A.Y.M.R. sat "appropriately" in his chair and played his Switch. (*Id.*) Stabler diagnosed A.Y.M.R. with "unspecified learning disabilities" and increased guanfacine. (*Id.* at 403-04.)

On May 3, 2023, Nicole Reeves, A.Y.M.R.'s teacher, completed a Teacher Questionnaire in which she opined that A.Y.M.R. had "obvious problems" in the following areas: comprehending oral instructions; understanding school and content vocabulary; reading and comprehending written material; comprehending and doing math problems; understanding and participating in class discussions; providing organized oral explanations and adequate descriptions; learning new material; recalling and applying previously learned material; applying problem-solving skills in class discussions; focusing long enough to finish assigned activity or task; refocusing to task when necessary; carrying out multi-step instructions; changing from one activity to another without being disruptive; organizing own things or school materials; completing work accurately without careless mistakes; working without distracting self or others; working at reasonable pace/finishing on time; asking permission appropriately; relating experiences and telling stories; using adequate vocabulary and grammar to express thoughts/ideas in general, everyday

conversation; and knowing when to ask for help. (*Id.* at 267-71, 273.) Reeves further opined A.Y.M.R. had a "serious problem" in the following areas: paying attention when directly spoken to; expressing ideas in written form; and sustaining attention during play/sports activities. (*Id.* at 267-68.) Reeves found A.Y.M.R. had no greater than a slight problem in all other areas. (*Id.* at 267-71.) Reeves noted A.Y.M.R. often received help from a fellow classmate or teacher on most activities. (*Id.* at 270.) Reeves stated that "[t]here is an obvious mental delay when [A.Y.M.R.] is learning a new topic or completing an assignment." (*Id.* at 272.)

On July 31, 2023, A.Y.M.R. saw Stabler for follow up and medication management. (*Id.* at 436-37.) Carrasquillo reported A.Y.M.R. had had some "aggression issues" in the last month. (*Id.* at 437.) On examination, Stabler found good but intermittent eye contact, normal motor activity, soft speech, "not nervous and not irritated" mood, full range of affect, normal thought content and thought process, normal perception, appropriate demeanor, and fair insight and judgment. (*Id.* at 438.) Stabler increased guanfacine but told Carrasquillo that if after two and a half weeks A.Y.M.R. was showing signs of sedation on the higher dose, she should reduce the dose to 2 mg and increase counseling. (*Id.* at 439.)

On September 19, 2023, A.Y.M.R. saw Stabler for follow up and medication management. (*Id.* at 428-29.) Carrasquillo reported A.Y.M.R. was taking 3 mg of guanfacine and was staying focused at home and at school. (*Id.* at 429.) However, A.Y.M.R. experienced stomach aches and drowsiness on the increased dose. (*Id.*) On examination, Stabler found good but intermittent eye contact, normal motor activity, soft speech, a full range of affect, neutral/euthymic mood, normal thought content and thought process, normal perception, appropriate demeanor, and fair insight and judgment. (*Id.* at 430-31.) Stabler reduced guanfacine to 2 mg. (*Id.* at 431.)

On November 8, 2023, Cynthia Reeves, A.Y.M.R.'s teacher, completed a Teacher Questionnaire and reported that A.Y.M.R. "was showing signs of a learning disability that impacts his ability to read and

understand grade level material, calculate math problems[,] and express himself in writing." (*Id.* at 306-07, 313.) Reeves explained that A.Y.M.R. received extra time to complete assignments and tests, directions were read to him when his reading skills were not being assessed, and he was provided with "smaller group settings with limited distractions." (*Id.* at 307-08.) Reeves reported that A.Y.M.R. was in a "general education setting" and received reminders to stay on task during class. (*Id.* at 308.) Sometimes A.Y.M.R. failed to complete homework or turn it in; Reeves provided reminders and A.Y.M.R. completed past due work in class. (*Id.*) Reeves opined that A.Y.M.R. had an "obvious problem" in the following areas: completing work accurately without careless mistakes and working without distracting self or others. (*Id.*) Reeves further opined A.Y.M.R. had no problems in the following domains: interacting and relating with others; moving about and manipulating objects; and caring for himself. (*Id.* at 309-11.)

**B. State Agency Reports**

On December 14, 2023, Kevin Lauer, Ph.D., reviewed the file and opined that A.Y.M.R. had a "less than marked" limitation in the following domains: acquiring and using information; attending and completing tasks; and interacting and relating with others. (*Id.* at 57-58.) Dr. Lauer further opined that A.Y.M.R. had no limitation in the following domains: moving about and manipulating objects; caring for himself; and health and physical well-being. (*Id.* at 58.)

On February 19, 2024, on reconsideration, Ann Lovko, Ph.D., reviewed the file and affirmed Dr. Lauer's findings. (*Id.* at 63-64.)

**C. Hearing Testimony**

During the August 19, 2024 hearing, A.Y.M.R. testified to the following:

- He is going into sixth grade. (*Id.* at 39.) He has not yet started school. (*Id.*) He struggles only in history class. (*Id.*) He does best in math and science. (*Id.*) He gets extra help at school. (*Id.*) His teacher reads to him. (*Id.* at 39-40.) He does not get in trouble at school. (*Id.* at 40.) He got in trouble one time, but since then he has not been in trouble. (*Id.*) He did not go to school for a few weeks because he was feeling bad. (*Id.*)

- He has problems reading "really big words." (*Id.* at 41.) If he read a story or heard it read to him, he could remember half of what happened. (*Id.*) He can add and subtract. (*Id.*) He does not remember how to multiply or divide. (*Id.*) He would not know if a cashier gave him back the correct change. (*Id.* at 41-42.) He sometimes does his homework at school. (*Id.* at 42.) If he does not finish in time, he will do it at home. (*Id.*)

- He does not watch TV. (*Id.* at 40.) He watches things about gaming on his phone or tablet. (*Id.*) He sometimes plays video games and has no trouble playing them. (*Id.*) He gets along with his parents and family. (*Id.*) He has friends his age. (*Id.*) He plays soccer. (*Id.* at 41.) He does not have problems running or walking. (*Id.*) He can ride a bike and is "pretty good at it." (*Id.* at 42.) He can swim a little. (*Id.*)

- He can take a bath or shower himself. (*Id.*) He can brush his teeth. (*Id.*) He has curly hair, so it is hard to comb it. (*Id.*) He can pick out his own clothes. (*Id.* at 43.) He does chores around the house. (*Id.*) He throws out the trash and sometimes does the dishes. (*Id.*)

During the August 19, 2024 hearing, Carrasquillo testified to the following:

- A.Y.M.R. gets grades between Bs and Ds. (*Id.* at 48.) He struggles with reading, "which has been a little hard," history, and math. (*Id.* at 48-49.) Music is his best subject. (*Id.* at 49.) He receives extra help at school. (*Id.*) He gets extra time. (*Id.*) The extra time helps him. (*Id.*) He can add. (*Id.*) He sometimes gets confused when subtracting. (*Id.*) He does not know how to divide. (*Id.* at 50.) He sometimes gets confused when multiplying. (*Id.*) He can play video games. (*Id.*) He can read books if they are easy and short. (*Id.*) He only got into trouble at school once; since then, school has not said anything. (*Id.*)

- Guanfacine helps his behavior at school, as well as his mood. (*Id.* at 51.)

- The only sport A.Y.M.R. likes is soccer. (*Id.* at 49.) He tried playing basketball. (*Id.*) His only physical problem is that he needs glasses. (*Id.*)

- He gets along with his sister, but they fight a lot. (*Id.* at 50.) He has friends his own age, and he plays video games with them. (*Id.*) He can get along with adults "when he's in the mood." (*Id.*) He plays video games for an hour or less. (*Id.* at 51.)

- She must remind him to shower or take a bath. (*Id.* at 50.) He can brush his teeth. (*Id.*) He can do his hair, although he does not like it. (*Id.* at 50-51.) He can dress himself. (*Id.* at 51.) He takes out the trash. (*Id.*) He rarely does the dishes. (*Id.*)

## III. STANDARD FOR DISABILITY

To qualify for SSI benefits, an individual must demonstrate a disability as defined under the Act. "An individual under the age of 18 shall be considered disabled ... if that individual has a medically

determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C).

To determine whether a child is disabled, the regulations prescribe a three-step sequential evaluation process. 20 C.F.R. § 416.924(a). At step one, a child must not be engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). At step two, a child must suffer from a "severe impairment." 20 C.F.R. § 416.924(c). At step three, disability will be found if a child has an impairment, or combination of impairments, that meets, medically equals or functionally equals an impairment listed in 20 C.F.R. § 404, Subpt. P, App'x 1; 20 C.F.R. § 416.924(d).

To determine whether a child's impairment functionally equals the listings, the Commissioner will assess the functional limitations caused by the impairment. 20 C.F.R. § 416.926a(a). The Commissioner will consider how a child functions in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for [ ]self; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). If a child's impairment results in "marked" limitations in two domains, or an "extreme" limitation in one domain, the impairments functionally equal the listings and the child will be found disabled. 20 C.F.R. § 416.926a(d). To receive SSI benefits, a child recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100, 416.1201.

A "marked" limitation is one which seriously interferes with functioning. 20 C.F.R. § 416.926a(e)(2)(i). "Marked" limitation means "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2)(i). "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.*

An "extreme" limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation means "more than marked." 20 C.F.R. § 416.926a(e)(3)(I). "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.*

If an impairment is found to meet, or qualify as the medical or functional equivalent, of a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant was born on March **, 2012. Therefore, he was a school-age child on September 20, 2023, the date application was filed, and is currently an adolescent (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since September 20, 2023, the application date (20 CFR 416.924(b) and 416.971 *et seq*.).

3. The claimant has the following severe impairments: attention deficit hyperactivity disorder (ADHD) and learning disorder (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6. The undersigned finds that the claimant has not been disabled, as defined in the Social Security Act, since September 20, 2023, the date the application was filed (20 CFR 416.924(a)).

(Tr. 21-31.)

## V. STANDARD OF REVIEW

The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-1300, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. ANALYSIS

In her sole assignment of error, Carrasquillo argues that the ALJ erred in finding that A.Y.M.R. "had only 'less than marked' limitations" in the domains of acquiring and using information and attending and completing tasks, "as the record supported at least marked limitations in these domains, necessitating a finding that [A.Y.M.R.] functionally equaled a listing." (Doc. No. 8 at 9.) Carrasquillo asserts that the ALJ failed to sufficiently explain these findings, and these findings were "inconsistent with the evidence of record." (*Id.* at 9-10.) Carrasquillo then identifies evidence in the record that she maintains supports

marked limitations in acquiring and using information and attending and completing tasks. (*Id.* at 10-11.) Carasquillo further argues that the ALJ failed to explain how playing video games for short periods of time and the ability to perform limited chores related to A.Y.M.R.'s academic skills and how A.Y.M.R. could perform school activities on a sustained basis. (*Id.* at 11-12.) In addition, Carrasquillo maintains that the ALJ erred to the extent the ALJ relied on A.Y.M.R.'s improvement with extra help at school to find "less than marked" limitations, as the ALJ was required to base A.Y.M.R.'s limitations on how he performs independently. (*Id.* at 12.)

The Commissioner responds that substantial evidence supports the ALJ's findings that A.Y.M.R.'s impairments did not functionally equal a listing. (Doc. No. 9 at 5.) The Commissioner asserts that the ALJ "cited several pieces of evidence" to support her conclusion that A.Y.M.R. had "less than marked" limitations in acquiring and using information and attending and completing tasks, including "unremarkable objective examination findings that were at odds with a greater degree of limitation in these domains" and improvement with ADHD medication. (*Id.* at 6.) The Commissioner argues that while Carrasquillo cites "various pieces of evidence" to support her position, "because the ALJ provided enough evidence under the standard of review for her findings to be upheld," Carrasquillo's evidence is "inconsequential." (*Id.* at 7) (citation omitted). The Commissioner maintains that Carrasquillo's argument regarding A.Y.M.R.'s daily activities is "unconvincing," as it was proper for the ALJ to consider these activities in the analysis, and this was "only one factor among others" supporting the ALJ's findings. (*Id.*)

In reply, Carrasquillo accuses the ALJ of "cherry-picking" the evidence and erroneously mischaracterizing A.Y.M.R.'s impairments "by simply summarizing unremarkable or positive findings." (Doc. No. 10 at 2) (citation omitted). In addition, Carrasquillo asserts that the Commissioner's arguments seem to "suggest" that Carrasquillo's assignment of error is nothing more than a request to reweigh the

evidence, but "[t]his common attempt to limit the Court's review by ignoring errors in the ALJ's analysis is misguided." (*Id.* at 3.) Carrasquillo argues that the alleged errors "highlight a failure to consider the combined impact of the evidence documenting [A.Y.M.R.'s] academic performance deficits [which] resulted in mischaracterizations that adversely impacted the decision." (*Id.*)

Substantial evidence supports the ALJ's functional equivalence analysis. In analyzing the testimony of A.Y.M.R. and Carrasquillo, as well as the treatment records, the ALJ discussed findings that both supported and undercut findings of disability. (Tr. 21-31.) In evaluating functional equivalence of the listings, the ALJ found in part as follows:

> As shown above, the claimant experiences difficulty at home and at school as a result of ADHD and learning disorder (Exhibit 1F, 2F, 3F, 5F, 1E, 5E). Testing has revealed overall cognitive skills in the very low range, and examinations have been notable for soft speech, intermittent eye contact, a reportedly nervous, irritated mood, an irritable, guarded demeanor, and only fair insight and judgment (*Id.*). Despite accommodations provided by way of a 504 plan, the claimant continues to struggle academically, performing below grade level in reading and math (Exhibit 1E, 5E, 5F). Educational records confirm difficulty with comprehension, retention, maintaining focus, and solving multi-step problems or tasks, and the claimant often needs help from adults to complete tasks (*Id.*). However, the claimant has made some progress with generally mild academic supports by way of a 504 plan, rather than an IEP, in the regular classroom setting (*Id.*). The claimant's mood and other psychiatric symptoms are treated with ADHD medication and individual counseling (Exhibit 1F, 2F, 3F), and mental health treatment notes confirm moderate improvement with said treatment (*See* Exhibit 3F/2, 6). The claimant's academic difficulties have likely been exacerbated by past attendance issues, and the record is absent indications of behavioral problems at school (Exhibit 1E, 5E, 5F). Additionally, the claimant is able to maintain friendships, participate in team sports, namely soccer, independently care for his personal hygiene, perform some household chores with reminders, and engage in enjoyable activities like camping, playing with Legos, and playing video games (Exhibit 3F/23, 8, Hearing Testimony). This confirms the claimant's severe mental impairments result in some functional limitations, but not to the point of rendering the claimant totally disabled.

(*Id.* at 26.)

In addition, the ALJ only found the questionnaires completed by A.Y.M.R.'s teachers to be partially persuasive, as the ALJ found the record evidence supported "slightly greater, albeit nondisabling, functional limitations in the domain of interacting and relating with others." (*Id.* at 30-31.) Finally, the opinions of the state agency reviewing sources support the ALJ's decision (*id.* at 57-58, 63-64), and the ALJ found their opinions to be persuasive. (*Id.* at 29.) Carrasquillo fails to challenge the weight assigned to these opinions on judicial review. (Doc. Nos. 8, 10.)

Regarding Carrasquillo's argument as to A.Y.M.R.'s daily activities, as the Commissioner points out, the regulations state that the ALJ is to consider *all* of a child claimant's activities: "We will look at the information we have in your case record about how your functioning is affected during all of your activities when we decide whether your impairment or combination of impairments functionally equals the listings. Your activities are everything you do at home, at school, and in your community." 20 CFR 416.926a(b). The ALJ acknowledged Carrasquillo's testimony regarding the limitations of A.Y.M.R.'s video game playing ("an hour or less") and household chores ("takes the trash out, but rarely does dishes"). (Tr. 24.)

It is the ALJ's job to weigh the evidence and resolve conflicts, and she did so here. While Carrasquillo would weigh the evidence differently, it is not for the Court to do so on appeal. The findings of the ALJ "are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001). Indeed, the Sixth Circuit has made clear that an ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

There is no error.

## VII. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

Date: August 25, 2026

*s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**